and we're very pleased to have him sitting with us today as we hear the three cases that we have on the sitting. The first case for the sitting is 2024-50712, Institute for Free Speech v. J.R. Johnson. We'll hear from Mr. Coldy. Is it Coldy or Cold? Cold. Silent. Silent or soft? Either one's fine. May it please the Court, Ed O'Cold for the Institute for Free Speech. IFS's standing to challenge the TEC's ban on non-profit corporations providing pro bono legal services to Texas candidates or committees is equivalent to the plaintiffs standing in Driehaus and it exceeds the standing of the plaintiffs in Speech First. Put simply, if those plaintiffs had standing, we have standing too. Like the Driehaus plaintiffs, we have a declared intention to engage in First Amendment activity that would violate the Texas Election Code as construed by the TEC. And like the Driehaus plaintiffs, our lawyers and putative clients face the risk of both civil and criminal penalties if they go so far as to form a forbidden attorney-client relationship between a corporation and a Texas candidate or committee. So is it your position that the Court erred because you didn't need, your client didn't need to be considered a candidate or a political committee, respectively, your clients at the time because they intended to be classified as them in the future? Yes, and I want to make clear they're not our clients now. They have never been our clients because that would be a crime under Texas law. Okay, well I don't. Our putative clients. Your putative clients. Yes, that's correct, Your Honor. They had a declared intention, in the case of Mr. Woolsey, he had a declared intention to run for office and begin raising money in the near future. Has the Commission ever brought an enforcement challenge against a law firm that provided pro bono legal services to a candidate previously? I don't believe that's in the record, Your Honor. Does that matter? It shouldn't matter for standing. In this case, we brought a, we sought an advisory opinion from the TEC. We specifically asked them whether we could do what we wanted to do and they told us, no, you can't do that. That would be a violation of the Texas Election Code. So they've essentially told us that if we did this, they would enforce the TEC's corporate contribution ban against us. So we did the responsible thing. We asked them whether we could do it. They said no. So under the circumstances, we face a credible threat of enforcement. Okay, I've got another question. What do we do with the qualified immunity situation? Well, we think that under Willie, they were on notice. In addition to the fact that we and the ACLU and the Institute for Justice essentially informed them that if they adopted an advisory opinion that went against us, that they'd be violating the First Amendment. Willie is a case that very clearly establishes three critical issues that go directly to the issue. One, the work that we proposed to do was and is constitutionally protected speech and association. Two, restrictions on that conduct are strictly scrutinized. And three, those restrictions are only permissible were narrowly tailored and based on a compelling state interest. Willie was on the books nine months before this vote by the TEC took place. So they were on notice. We consider police officers to be on notice when this court issues decisions on use of force opinions. It should be no different for TEC commissioners. I would note that my learned colleague from the government did not cite Willie once in their briefing. And the reason for that presumably is because they know Willie's a problem. They don't want to talk about Willie. So, we . . . So even if you were not to prevail, and I'm not foreshadowing on the qualified immunity, we would, under your theory, we would still send it back, though? We would hope so, yes, Your Honor, because we could still seek the official capacity. Capacity. Yes. Yes. Is that . . . That would give us something. But if we didn't raise the qualified immunity issue now, you know, we would have been waived. And it's our view that . . . How did you come up with the amount of money in the complaint? Well, 1791 was the year that the First Amendment was ratified. It has the added bonus that it's under $20. So, no jury trial because, you know, only if you have $20 in damages. You may . . . That's all my questions for now. Okay. Very good. So, let me ask you, since we've stopped for questions at this point, and perhaps this is better addressed to your opponent, but is it your understanding that you may provide legal services in kind up to the amount and you must bill? Is that what you believe the state expects? No. Well, our understanding is that that would be a crime also. Now, there's an interesting issue if they had given us a dispensation, Your Honor, and said, well, you can provide it up to the contribution limit. But it is a . . . there's a blanket ban under Texas law for corporations such as IFS, which is just a non-profit corporation, to provide any contributions to a Texas candidate or committee. It doesn't differentiate between in kind versus a direct cash contribution. And has this been a change? In other words, has this circumstance arisen before and been handled differently prior to this that you're aware of? Not that I'm aware of, Your Honor. And that's why we sought an advisory opinion. We felt that, look, under Button, we have this right. Button and Primus, the Supreme Court opinions, and Willie, the Fifth Circuit opinion, we have this right. We think that right, guaranteed under the First Amendment, exceeds the . . . whatever state interest the state of Texas may have in trying to regulate corporate contributions to Texas candidates or committees. And, you know, we sought to persuade the TEC to essentially give us a dispensation by way of an advisory opinion to say, hey, you can do this. To our surprise, they said no. So we did the responsible thing. The next responsible thing is we filed a pre-enforcement challenge. And essentially, the District Court unfortunately dismissed our case in part based on standing. And we think we very clearly have standing. What else are we supposed to do? The District Court said, well, you have to take some kind of step towards representing these individuals. They're not really clear . . . well, it's not clear at all. The District Court doesn't tell us what that additional step would be. I would note that if we were to enter an attorney-client relationship with a Texas candidate or committee, we are committing a crime under Texas law. If we took a substantial step towards committing that crime, that is also a crime under Texas law. That's the crime of attempt. So, again, we are doing the reasonable, smart thing by filing a pre-enforcement challenge. You can't sign an engagement letter. You can't . . . the District Court seems to think that you could order signs or something, or they could order signs. You can't order signs for them under this circumstance, can you? Well, the District Court . . . I don't understand that. Can you help me? Your Honor, the question illustrates the problem that we have. The District Court doesn't tell us what else we were supposed to do. We're being careful in not entering into an attorney-client relationship. That's why, you know, I was concerned about describing Mr. Woolsey or the League as a client because we want to be very clear. They are putative clients. We would like to have them as our clients. They would like to have us represent them, but we have not entered that relationship, nor did we want to do anything that looked like you might enter an attorney-client relationship because, as the Court likely knows, you don't necessarily have to have a formal agreement with the attorney and the client to have an attorney-client relationship occur or have the perception of that occur. We don't want to even get in that argument because just the accusation, the process is the punishment. We don't want to be accused of violating Texas law, which is why we did everything we did, and we would like to be able to have our pre-enforcement challenge adjudicated on the merits so that we can exercise our First Amendment rights. What is the alleged compelling interest here? The compelling interest is the right to associate. No, I'm talking about the government would have to have a compelling interest. That would be a question directed at my— What have they said? My colleague and my friend from the government has said nothing at all about a compelling interest, and none of the briefing has there been any whiff of a compelling interest. And, you know, it's our view that the focus on standing has been deliberate, smart play if you're representing the government, because if you—if one gets into strict scrutiny, their analysis essentially would fail just based on compelling interest. Secondly, Your Honor, they have to meet narrow tailoring, as the Court knows. A blanket ban is by definition not narrowly tailored. Personally, I would like corporations to be able to donate to candidates and committees, but that's a different issue. That's not an issue that's represented by this case beyond the issue of pro bono legal services. They could have easily said, fine, we give you a dispensation for what you're proposing to do, because that's been recognized as a First Amendment right for over 60 years, but, you know, you can't give cash contributions to candidates or committees. They could have protected their regime, but recognized this First Amendment right. But, you know, we've had cases, though, even where the government will get up at the oral argument and say, we have no intention of pursuing this, and we disclaim anything that we would pursue this. And then, they have to date refused to give those assurances, correct? That's correct, Your Honor. Nowhere in the briefing do they say, oh, IFS can go ahead and do this. Everyone agrees, including Judge Ezra below, that if we went and represented a Texas candidate or committee . . . Well, I'm going to ask Mr. Lew if he's going to . . . he's writing it down, that he's ready to address that. And I would submit, Your Honor, that even though, you know, there might be some upside in some ways to the government all of a sudden announcing that they are not going to violate our First Amendment rights, or continue to violate our First Amendment rights, there's still this advisory opinion on the books that was adopted by a majority of the TEC. The TEC is the enforcement body for the Texas Election Code, and a majority of the TEC voted to say to IFS, no, you can't do what you're proposing to do. I mean, we would be foolhardy to ignore that advisory opinion and go ahead and proceed to violate Texas law. I don't want to do that. To that opinion, in qualified immunity, the Executive Director of the Commission did not vote in favor of the advisory opinion, yet he's included in his individual capacity. Would you like to explain that? Your Honor, our basis for including the Executive Director is that he advocated in favor of the majority position. And it's our perception, at least, that the commissioners give a certain degree of deference to the Executive Director. And so, you know, we attempted to persuade the Executive Director, as well as the commissioners, hey, don't do this, you're violating our First Amendment rights, and we gave them all opportunity to vote the other way. Several commissioners did vote the other way. They are not sued individually, because they appear to have accepted the notice and the argument that we made. So, our view is that the Executive Director was part of the yes vote by the majority, and he advocated in favor. The record does show that, that he did advocate for that outcome. And he rejected, specifically rejected, our First Amendment arguments. And so, that is, in our view, direct participation. Again, we're just talking about nominal damages. As the Court knows, nominal damages in individual capacity claims require some sort of direct involvement by the individual. In this case, the individual was directly involved in the process. I see that I have about a minute left. If the Court doesn't have any questions, I would just say that in closing, we ask this Court not only to find that we have standing, but to enter summary judgment in IFS's favor regarding the as-applied challenge. In the alternative, we ask this Court to remand this case with instructions to the district court to deny the TEC's motion for jurisdictional discovery. How would we have jurisdiction to grant a summary judgment for you on this appeal, this posture? Isn't that just wishful thinking? Because we wouldn't have jurisdiction to do that, would we? Well, you know, you got to make the ask, Your Honor. Our view is we filed summary judgment very early in this case. We made our case. We put our cards on the table. We have been waiting, just like the Court apparently is waiting, for a compelling interest from the government. We have heard zero from a compelling interest. We got hit with a procedural motion to dismiss that is focused on standing. There's a few other arguments in there, but standing is the main argument. And we still have not heard anything about compelling interest. So the record as of today is we filed the motion for summary judgment. They have not responded substantively. Thank you, Your Honor. Thank you, and you've saved time for rebuttal. Yes. Thank you, Your Honor. Thank you, Chief Judge Elrod. May it please the Court, Corey Liu on behalf of Executive Director J.R. Johnson as well as the commissioners of the Texas Ethics Commission, some of whom are sued in their official capacity and some of whom are sued in their individual capacity as the questioning has already rightly noticed that distinction. And with that distinction, that's really the two sets of issues that are before this Court. I'm planning to start with qualified immunity, happy to go wherever you want to take it, but the qualified immunity issue deals with the individual capacity claims. And those are suing these defendants, the five defendants who voted in favor of the advisory opinion as well as Executive Director Johnson. And individual capacity claims are backwards looking, right? Retrospective for some past conduct that is alleged to have violated someone's rights, seeking money damages today to redress those past actions. The only facts that are alleged to be the basis of that individual capacity claim against those six defendants is the issuance of the advisory opinion, not any enforcement action, not any stopping of any conduct from happening. And so that's what distinguishes this from cases where there actually is a claim of a violation. What these defendants did, these commissioners who are public servants, who are volunteers, who are not paid, who are respected top lawyers in our community, who are appointed by the governor, lieutenant governor, and speaker of the house at an open meeting of the commission because state law requires the commission to answer a request for an advisory opinion and an advisory opinion can only, the only legal function it serves is to provide an affirmative defense if it says something is lawful. And because they were under statute required to make a decision on that request for an advisory opinion, they read state law which says that contributions include in-kind contributions such as giving goods or services to a candidate, right? If you provide valuable things to a candidate for free, that could be one way to circumvent the direct monetary contribution. So if you give services, that's an in-kind contribution and as state law and really as the agency has held for many years, that includes legal services. It's interesting that you started with the individual capacity claims for just this tiny amount of money, but nonetheless you have. Can you address the case that your friend on the other side said that you failed to address, that they believe is dispositive on the qualified immunity question? Yes, I pulled it up on my phone as he was mentioning it. That is a case involving the anti-veritary principle which is similar to that in the Button case from the Supreme Court that they've identified. The issue there is whether groups like the NAACP or someone else may advise a potential client of what their legal rights are to refer them to certain lawyers and it's involving challenges to sort of state bar type regulations. Isn't that the same kind of thing here? It's different because those are essentially prohibiting communications with people about their rights and which lawyers they can have. Here, it's not actually a ban on legal representation. It is a ban on doing so for free when it's to a political candidate and that's the principle that the U.S. Supreme Court in Beaumont has said is the limited and he talks about compelling interest. The Supreme Court in the Beaumont 2003 case says that corporations donating to political candidates do raise enough public concerns in terms of whether the aggregation of wealth by corporations provides a distortive effect, the interests of those who've donated or invested in that corporation, and various other factors that the Supreme Court has said. That's legal in the First Amendment and then this court in the Texas... Isn't that in the legal services scenario? So those did not involve legal services. The Reisman case from this court in 2014 said that the giving of a mailing list is an in-kind contribution and so I think that this is an analog to show those are things that are very valuable, right? You can fundraise off a mailing list. You can make money off of it. It's something people would pay good money for. Legal services can be the same way and the challenge with, you know, they have this idea of, well, we're going to bring novel plaintiff side litigation. I haven't heard any limiting principle in terms of, you know, what if you had an embattled political candidate who was desperate and had some, you know, committed some crimes or scandals and someone decided to make, you know, a half million dollar contribution to their legal defense under... That person would have to... Under their principle, that person could do it directly. Under current state law, they could still do so but only through a publicly disclosed mechanism through a political committee, right? The way you do it on paper with filings to the Ethics Commission to give money to those people. So you can still do it but it's just through public way. I'm dealing with your individual capacity claims right now. Your position is that the anti-baritrary case, the case about... Is not on point. And so that you would still be entitled to your clients, the five defendants and the executive director would be entitled to qualified immunity because there's no clearly established law. That's your position, correct? That's right. And I would actually perhaps urge this court to consider even making a step one ruling. And I'm actually not sure if opposing counsel would be opposed to that but... But you did in your brief at all. We did say we want... We ask... Encourage the court to both make a step one and step two ruling in our... But you didn't discuss the relevant case, why they're different. So part of it was addressed in standing so I didn't want to essentially copy-paste the First Amendment analysis there because I put it under the... Did you raise your quasi-judicial immunity argument in the district court? No, that's an alternative argument that the court could potentially affirm on. Why isn't that forfeited? The court has stated that the judgment below can be affirmed on whatever grounds the court deems appropriate. But I think qualified immunity, it was the correct decision. And I would just suggest we did brief that at step one, this court could say under Beaumont and under Reisman, that's a 2003 US Supreme Court case, the 2014 Fifth Circuit case, both said the Texas... Well, the Supreme Court case was talking about the federal ban on corporate contributions. The Fifth Circuit case was talking about specifically the Texas ban on corporate contributions, this exact statute that they're looking at. He did not even cite that case and explain why his principle can be reconciled with binding Fifth Circuit precedent affirming the constitutionality of the corporate contribution ban, which this advisory opinion is essentially just interpreting already existing state law saying we define contributions as including in-kind contributions. So this court could, at step one, essentially resolve the First Amendment question saying we're bound by our own precedent and by Supreme Court precedent. But certainly at step two, the clearly established inquiry, quite frankly, this case is exactly the sort of case that qualified immunity was designed to prevent. These are consummate professionals. These are not law enforcement officers abusing citizens and abusing their authority. These were lawyers at a public meeting, commissioners, unpaid volunteers, essentially interpreting state law as it already exists, which says in-kind contributions include services. And there could be a way to circumvent our campaign finance laws if you could allow people to essentially give free legal services to people without having to document it and disclose it in the way that's normally required for a political contribution. So I would encourage the court, you could at both step one say that the First Amendment issue has no merit, and at step two say certainly they haven't violated clearly established law. And as cute as it is to have $17.91, this type of litigation imposes real costs on the taxpayers and our public servants. And that's exactly what qualified immunity is designed to prevent. It's only for— Well, let's talk then about the actual commission and its ruling. If the IFS today were to agree to represent a candidate for Texas office on a pro bono basis, would your client pursue enforcement against the IFS? It actually depends on the facts of the case. So, for instance— So you're not going to disclaim that you're going to pursue them, that your client's going to pursue them. So why isn't the case ripe? It would depend on the facts of the case because Mr. Woolsey, for instance, if he wanted to make signs in his capacity, even though he is a city council candidate or will be seeking re-election as they've alleged, he could make signs, let's say a Greg Abbott sign, want to post that in the right of way, and that would provide him a vehicle to essentially be in the exact same situation as he would be under the sort of declaration theory that they've proposed. And that would give him a way to be pro bono represented by the Institute for Free Speech to challenge this fine print, you can't have political signs in the right of way of a highway issue. They could have done that two years ago when they— You can't actually violate the law in order to have standing. You can—that is the whole purpose of a pre-enforcement challenge. And the factual distinction I'm making is that the limited nature of the advisory opinion was if he—if it was in connection to his campaign. And so that would be, for instance, if it was a Chris Woolsey for re-election sign, that would be one of the legal problems of his campaign if he tried to violate that. But in terms of IFS's alleged free—First Amendment right to bring cases that it wants to bring, there's actually numerous ways that it could challenge the fine print highway right of way issue. They could have done that two years ago when they first filed this suit. Again, if Mr. Woolsey wanted to print a sign that wasn't the Chris Woolsey campaign sign, but just any other sign, they could do a pro representation. It could have been my friend, Mr. McDonald, who's their local counsel. He's been a plaintiff in cases before. If he wanted to print a sign, he could have been the plaintiff. So this— But that would make him do the thing. It wouldn't be because the advisory opinion only says if it's in connection with a campaign does it count as a campaign contribution, right? So if you're helping Mr. Woolsey meet his campaign expenses, such as his legal expenses, that would be a contribution. But if it was just in his expressive capacity as a citizen supporting another candidate, that actually wouldn't raise the issue. And that's why, as a factual matter, the district court was right to say, we're not actually—I'm not actually convinced that this is a real controversy, that this is a real person who would actually do these things. If he really wanted to knock down the fine print requirement as soon as possible, two years ago, he could have challenged it just in his capacity as an ordinary citizen—again, a Greg Abbott for governor sign, something like that—where he—it doesn't have anything to do with his political campaign. He's just an ordinary citizen. So this—the whole underlying issue that they're claiming they want to litigate in order to be able to get at these fine print requirements, which, again, are—are plainly constitutional. It's just a factual disclosure. But this sort of scenario they've concocted is artificial. And, again, they could have gotten at these issues compli—without ever crossing this corporate contribution ban issue. So they've engineered the factual scenario because what they're really trying to get at is not the fine print issue with the right-of-way disclosure, but actually this corporate contribution ban issue. The law is non-moribund. It—it gives—it's a pre—for—why isn't there pre-enforcement standing to facially challenge the law that is non-moribund, which gives rise to a credible threat of prosecution in the absence of compelling controversy—contrary evidence? And I'm quoting from speech first. Yeah, I think it's the factual nature of the case, as I've kind of just outlined. In speech first, the two cases he relied on, Dry House and speech first, they do involve different scenarios. So speech first, the university promulgated these campus speech regulations around 2018, 2019, when there was a lot of controversy over certain issues in free speech. Then they ended up withdrawing them, but—to try to make the case go away, but those regulations involved kind of ambiguous, vague terms such as harassment, bias, and—and actually the vagueness of it itself prevented the students from knowing what they could or couldn't say, because they felt that there might be, you know, ideological biases or—or enforcement biases in the way those were handled, and so that harm was being dealt to them. Here, we have a law that's already been on the books for decades, and as Your Honor pointed out in—in one of your early questions, there is no history of enforcement here, and so the—the—the proposition I'm urging the court to—to adopt in its opinion would be that an advisory opinion alone, without any evidence of enforcement action, is not sufficient to—to confer standing, at least in the—the factual scenario here. And—and if this court were to allow standing here, the plaintiff could then just file—basically redraft an affidavit and challenge 30 or 50 or 100 different laws on the books, essentially just from their laptop at home, without necessarily real controversy, because they're trying to litigate this just on declarations, and—and this court reopening the door to much more  What if—Mr. Liu, what if—what if there was a law firm that wanted to represent some—some people who were trying to protest colleges and universities who discriminate based upon race, and they wanted to protest against those who—who discriminated based upon race, and one of the students decided that they were going to run for state representative, because one of the colleges and universities is a—is a state school, and this—one of the students who's gotten to know the lawyers and says, you know, I need some guidance, some legal help to make sure that I'm complying with, you know, how—I don't know how to be a state representative, and what are all my requirements for that, and how do I fundraise, and do I need a treasurer, and all of the things you would need to do to run for Texas office. Are you saying that the—that the—that they would—that firm would not have the right to—you know, they've got an existing client relationship because they're pursuing these other claims, and that they can't give this advice? It would turn on the facts of the case, right? I just gave you the facts. So if the student was, as a plaintiff in that case, was vindicating their constitutional rights as an applicant to that university, I think—I—I can't speak for the commissioners, right? It ends up having to be a 6 to 2 vote to proceed, by the way, which this advisory opinion was a 5 to 3 vote, which is another factual issue. What does that matter? It goes to the— If the advisory group opinion on the books, what difference does it make if it's 5 to 3 or, you know, the most—4 to, you know, I guess 4 to 4, and the executive director breaks the tie? I mean, I'm just making that up, but it doesn't matter. Sure. Those are just additional procedural facts that show that it's not a strong likelihood of enforcement, that there are possibilities. I can't speak for their—actually, three of the commissioners— Can—can the lawyer give the advice, or is it not ripe yet because they haven't signed an engagement letter or actually done any advising? Going back to the student challenging discrimination, if it has to do with that student's own experience of discrimination, at least just speaking from my interpretation, if I was a commissioner, I would say that that's related to vindicating their own rights as a— Keeping them running for office? Yes, and so— Do you think that they have another good reason to run for office? You're saying it takes them out of this— Well, it depends— —advisory opinion? It depends on whether it's in connection with the campaign. That's part of the statutory language in the advisory opinion, so— But it would be in connection. He's wanting advice on his campaign so that he can become a state rep and speak more forcibly about these issues. Right, and at least I'd have to go through, you know, the history of advisory opinions to make sure I've got everything, but my understanding is in connection with the campaign is basically campaign expense, right? So if you get in trouble as a political candidate, I mean, that's actually typically where we see this, right? If a candidate gets in trouble, for example, with the Ethics Commission because they violated some ethical things or criminal issues even, you know, corruption or bribery, right, those legal expenses are connected to their office in a way that vindicating your own rights that you experienced as a citizen, not because you were a candidate, that would be a factual distinction. I think you would—the commission—the commissioners would not want to—would say that that conduct falls outside of the statute, and that's—those factual distinctions are why I think the district court was correct to say, looking at the facts, that this case was premature. It chills speech. It chills legal representation. It—I mean, what is the compelling interest is that somebody will get more contributions than they should? Is that the compelling interest? It is the interest in—instead of allowing corporations to provide things to candidates directly for free, whether it's a dollar contribution or valuable services that could be very expensive, to require them essentially what corporations do now, set up a political action committee. What if it's an LLP? What if it's a partnership? Those would not be covered by the statute. It's narrowly limited to corporations and labor unions. So that actually would be lawful. And then, in terms of the compelling interest, I would urge the court to look at the Beaumont case. Since 1907, Congress, starting with President Roosevelt, has completely banned corporate political contributions. In 2003, in the Beaumont case, the court identified that corporations have these special legal protections that allow them to attract capital and preserve it. And in the case of a 501c3, tax-exempt status as well. Second of all, individuals who pay money into a corporation should be protected from having their money spent on political activities. And then third, this provides a conduit to bypass the disclosure scheme, right? Instead of going to a political committee, having the committee file the paperwork with the Ethics Commission so all of this is fully disclosed, they would be directly contributing to the candidate. And so these sort of narrow corruption interests, it's only with a political candidate or political committee, right? Even a political candidate, when the contribution is not related to their campaign. So again, the student who has experienced racism, or the political candidate who's putting a sign, let's say, for Greg Abbott for governor, instead of for his own campaign. Those aren't related to his own political interests. And so there's less of that anti-corruption concern and in that narrow context, both the U.S. Supreme Court in Beaumont in 2003 identified as being legitimate under the First Amendment, as well as Reisman. Those two federal precedents squarely resolve this First Amendment issue that it is constitutional. It's actually not even strict scrutiny or narrow tailoring. These cases are so early, the reasoning goes back to even, you know, these laws were passed in the early 1900s and have been around since then. So the court would be essentially upturning, overturning longstanding federal law as well as state law if it were to go down the path IFS asks for. So we'd ask the court to affirm and dismiss with prejudice. Thank you. We have your argument. Mr. Cole, do you save time for rebuttal? Thank you, Your Honor. Just to clear some more brush on the qualified immunity question, Judge Goodry, you had asked about J.R. Johnson's role in ROA 13, paragraph 5 of our complaint. We allege that J.R. Johnson briefed the Commission on the proposal that became Ethics Advisory Opinion number 580, which burdens IFS's free speech rights. And there's similarly information regarding his advocacy in favor of adoption of that opinion that was in the summary judgment record. With regard to counsel's argument, I had to listen very carefully because I wasn't quite sure I followed it entirely. He seems to, my friend, seems to indicate that we could have filed the challenge against the sign requirement if there was some scenario that I, to be honest, couldn't fully understand, but that Chris Woolsey, who is actually a candidate under Texas state law today, he's filed a treasurer report. It's on the CORSA Canada website. If he put up a sign for Greg Abbott, I don't understand why he would want to put up . . . If he wants to endorse some other candidate, then apparently he would be allowed to challenge according to them. But I don't know that that would apply for like a judge in Texas because you can't endorse another candidate as a judge, and so that wouldn't be a way to do it. But for a representative or something, you could, I guess, you know. And that's a new fact, Your Honor. That's not what he wants to do, as we allege in our own point. Paragraph 34, this is ROA 19, when he runs for re-election or if he chooses to run for a different elected office in Texas, Woolsey intends to print and post political signs, political advertising signs, in support of his candidacy. He wants to speak in favor of his own candidacy. So I don't, I don't think you get to change the facts to offer some kind of a counter scenario. I don't believe my friend from the government really provided a persuasive argument for why Willie doesn't apply. There's nothing that I could find in Willie, Button or Primus or any of the related cases that limit those cases to anti-baritrary situations. Willie says strict scrutiny applies. They need a compelling interest. A compelling interest might be the prevention of some kind of quid pro quo or the perception thereof. How is IFS, a non-profit corporation, providing pro bono legal services to a city of Corsicana city council member or candidate? How is that, what do we want from the city of Corsicana? Nothing. There is no anti-corruption interest there. If the government wants to protect the corporate contribution ban and other circumstances, then they can do that through narrow tailoring. The appropriate mechanism would have been, in response to our request for an advisory opinion, to do something that many state administrative bodies do and have done, which is issue a limiting construction, which would then be essentially binding and would have told IFS and other non-profit corporations that you can do what you want to do. This is what we asked them to do. They didn't do it, so that's why we're here today. Your friend on the other side seems to think that if we were to rule in your favor, and I guess this included just on the standing issue, that we would somehow, the sky would be falling from federal law and state law and the Beaumont case and everything would come crumbling down. Would you address that, please? Well, they would have to defend potentially a lawsuit on this compelled signage requirement. I understand why the government, in the agency in this case, doesn't want to be sued on a pro bono basis by IFS or similar non-profit providers. That's not a compelling interest. That is a government self-interest, but it doesn't, certainly isn't a compelling interest that overcomes IFS's First Amendment right to speak and associate for purposes of pro bono litigation against the government. I see that my time has expired. Thank you, Your Honor. Thank you. We have your argument. We appreciate the argument on both sides. This case is submitted. Our next case